## S. H. DIKEMAN v. DAVID NORRIE.

STATUTE OF FRAUDS AS TO RESULTING TRUST.—Where A. agrees with B. that he will purchase from C., at a given price, a Sheriff's certificate of sale, which C. holds, of a tract of land, and that B. shall furnish one half of the money, and that the assignment of the certificate shall be taken in A.'s name, for the joint benefit of A. and B., and B. furnishes A. his proportion of the money, when in truth A. has already bought the certificate unknown to B.: *Held*, that A. is estopped from alleging that he had made the purchase before his agreement with B., and that on this ground said agreement is within the Statute of Frauds, and does not create a resulting trust.

RESULTING TRUST.—Where A. agrees with B. that he will purchase a Sheriff's certificate of sale of a mining claim, and take an assignment in his own name for the joint benefit of both, and A. makes the purchase, B. furnishing his proportion of the money, and takes a Sheriff's deed in his own name, a resulting trust arises, and A. holds a part of the property in trust for B.

IDEM.—Such resulting trust cannot be defeated by the fraud of A. in making this agreement and taking B.'s money, when, in fact, he had already, unknown to B., made the purchase.

VARIANCE BETWEEN PLEADING AND FINDING OF FACTS.—If there is a technical variance between the evidence and finding of facts and the pleading, and no objection is made on that ground in the Court below, but the objection is taken for the first time in the appellate Court, the judgment will not be reversed by reason of such variance.

APPEAL from the District Court, Fourteenth Judicial District, Nevada County.

The facts are stated in the opinion of the Court.

*Williams & Johnson*, for Appellant.

Section six of our Statute of Frauds, (1 Hittell, paragraph 3,150,) provides that no estate or interest in lands, except leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating

thereto, can be created, etc., unless by act or operation of law, or by deed or conveyance in writing, etc.

There is no pretense that the trust sought to be established in the case at bar was created by deed or conveyance. It arises, if at all, within the exception of the statute, and is one of the class known as implied or resulting trusts. (2 Story's Eq. Jur. Secs. 1,201, 1,202.)

The right acquired by plaintiff, as assignee of the certificate of sale, under his purchase from Seiden, was at the time of the purchase held by plaintiff free of any trust in favor of defendant. A reference to the findings discloses that plaintiff made the purchase and paid the purchase money for the certificate several days before any understanding between him and defendant, or the advance to him of any money by defendant. It follows that whatever right the assignment of the certificate conveyed to plaintiff was at that moment of time held by him in his own right, and free of any question of trust.

The right acquired by plaintiff as assignee of the certificate of sale was an interest in lands, and could not be charged with a trust, unless by act or operation of law, or by deed or conveyance in writing. (Statute of Frauds, Secs. 6, 25; *Green* v. *Clark*, 31 Cal. 594; *Page* v. *Rogers*, 31 Cal. 301; *Hughes* v. *Moore*, 7 Cranch, 176; *Millard* v. *Hathaway*, 27 Cal. 144, 145.)

The facts found show that no trust resulted to defendant either in the equitable estate held by plaintiff as assignee of the certificate, or in the legal title to the land into which that estate was perfected by the Sheriff's deed.

The equitable estate held by plaintiff as assignee of the certificate was of equal dignity with the legal title to the land so far as the creation of any trust or interest in the same was concerned. (See authorities last cited.)

The ground of the trust sought to be established being the alleged payment of purchase money for the equitable conditional estate conveyed to plaintiff by the assignment of the certificate of sale, the facts found must be judged by

the same rule of law as the case where B. claims a resulting trust in lands conveyed to C., grounded on the alleged payment by him of the consideration money. In such case, the foundation of the rule upon which the recovery depends is the conversion of money into land. That is to say, the owner of the money may follow it, and claim a trust as resulting to him in the land purchased with it, although the title be taken in the name of another. The land stands in the place of the money with which it was purchased, and the beneficial interest in it results to the owner of the fund. In short, that the change of the property from personal to real, shall not affect the right so long as the money can be clearly traced into the land. (*Botsford* v. *Burr*, 2 Johns. Ch. 414; *Steere* v. *Steere*, 5 Johns. Ch. 19; *Lathrop* v. *Brampton*, 31 Cal. 22.)

But in such case the payment of the money must be clearly proved, and the evidence upon the point will be received with great caution. (1 J. J. Marsh. 3; 1 Lomax Dig. 203; 10 Paige Ch. 180, 181; *Millard* v. *Hathaway*, 27 Cal. 142.)

It is further indispensably necessary to the creation of a trust on the ground stated, that the payment of the purchase money at the time of the purchase be clearly proved. The trust must arise, if at all, at the time of the purchase. It cannot be raised by matter subsequent. The money of the person claiming the benefit of the purchase must have formed *at the time* the consideration of the purchase, and became converted into land. (*Botsford* v. *Burr*, 2 Johns. Ch. 414; *Steere* v. *Steere*, 5 Johns. Ch. 1, 19; *Boyd* v. *McLean*, 1 Johns. Ch. 582; *Bartlett* v. *Pickersgill*, 1 Eden, 515; S. C. 4 East, 577; *Willis* v. *Willis*, 2 Atk. 71; *Dorsey* v. *Clark*, 4 Harr. & Johns. 551; *Hall* v. *Sprigg*, 7 La. 243; *Jackman* v. *Ringland*, 4 Watts & Serg. 149; *Stark* v. *Cannada*, 3 Littell, 599; 4 Kent's Com., old paging, 306; 1 Lomax Dig. 204; 2 Story Eq. Sec. 1,201; Fonblanque's Eq. 421, and cases cited; Hill on Trustees, 96, and cases cited; *Seward* v. *Jackson*, 8 Cow. 428; *Jackson* v. *Moore*, 6 Cow. 726; *Rogers* v. *Murray*, 3 Paige Ch. 398; *For-*

*syth* v. *Clark,* 3 Wend. 650; *Hidden* v. *Jordan,* 21 Cal. 92; *McCue* v. *Gallagher,* 23 Cal. 53.)

If the party who sets up a resulting trust has paid no part of the purchase money, he cannot show by parol proof that the purchase was for his benefit or on his account, for this would be subversive of the Statute of Frauds. The whole foundation of the trust is the payment of the purchase money, which must be clearly proved. (*Bartlett* v. *Pickersgill,* 1 Eden, 515; S. C. 4 East. 577; 2 Fonblanque's Eq., 116, note, and authorities there cited; 1 Lomax Dig., 204; 2 Story's Eq. Jur. Sec. 1,301, *a,* note 1, and cases cited; 2 Story, 1,201; *Draper* v. *Gordon,* 4 Sandf. Ch. 210; *Bayliss* v. *Baxter,* 22 Cal. 575; *Millard* v. *Hathaway,* 27 Cal. 143.)

*T. B. Reardan, A. A. Sargent,* and *A. C. Niles,* for Respondent.

Conceding that "the right acquired by the plaintiff as assignee of the certificate was an interest in lands," yet the certificate was not a conveyance of the land in any sense of the term; it was evidence only that the purchaser had paid so much money upon a conditional sale, and it entitled him to the Sheriff's deed if no redemption should be effected within the statutory time. It is not executed in the manner and form prescribed by our statute concerning conveyances. It is not under seal, nor is it acknowledged—both of which are essential in order to convey or affect real estate. The interest acquired by the purchaser will pass by a parol assignment of the certificate itself, which would be utterly ineffectual for that purpose if it reached to the title of the land. The payment of the sum of money agreed upon between the plaintiff and defendant was equivalent to a redemption of the defendant's interest in the mining claims. That was the purpose, and the plaintiff so understood it; and with that understanding accepted it. It can make no difference whether the defendant parted with his money before or after the certificate of sale came to the hand of the plaintiff. He paid it to

save his property, and before the time for redemption had expired. He was lulled into a feeling of security by the acts and promises of the plaintiff; and he suffered the plaintiff to acquire the legal title to his estate, under the assurance that it would be reconveyed to him upon request.

But if the Court should regard the transaction as neither equivalent to a redemption, nor as creating a resulting trust, we then submit that the plaintiff has acquired the legal title to defendant's property by fraud, and it comes within the definition of constructive trusts. He was a copartner, and occupied a fiduciary relation to the defendant. He bought the certificate in his own name, without the knowledge of the defendant, and only a few days afterwards accepted his money for the pretended purpose, and with the avowed promise of buying it, agreeing to take a deed from the Sheriff in his own name, and then convey to the defendant. This fraudulent concealment, and false and deceitful promise and pretext, prevented the defendant from regularly redeeming his estate. He now retains both the purchase money and the property, and invokes the aid of the Statute of Frauds. In *Reach* v. *Kennegate*, 1 Ves. 125, Lord Hardwicke said: "The Court has adhered to this principle, that the Statute of Frauds should never be understood to protect fraud; and, therefore, whenever a case is infected with fraud, the Court will not suffer the statute to protect it, so that any one should run away with a benefit not intended."

If the plaintiff can shield himself behind the Statute of Frauds in this case, if he be allowed to retain an unconscionable advantage gained over the defendant by gross fraud and deceit, it must be because the remedial powers of this Court are restricted by some technical, inflexible rule or principle of law which excludes this defendant from any standing in Court. But where the fraud is glaring, we think the Court would act upon the maxim: "*Boni Judicis est ampliare jurisdictionem.*" Courts of equity have, very wisely, never laid down as a general proposition what shall constitute fraud, or any general rule, beyond which they will not

go upon the ground of fraud, lest other means of avoiding the equity of the Courts should be found out.

By the Court, SAWYER, C. J.:

The plaintiff alleges that he is the owner of the undivided two thirds of certain mining claims, called the "Caledonia Claims," including flumes, sluices, etc., situate in Nevada County; that an undivided third is in possession of one Wood, and that plaintiff and Wood are tenants in common of the same; that defendant, Norrie, asserts some claim in and to said mining ground, but denies that he has any estate or interest therein; that said plaintiff and Norrie, since July, 1864, and said plaintiff, Norrie and Wood, since January, 1866, have worked said claims in partnership; and asks that an account may be taken and said partnership dissolved, and the assets distributed among said partners, according to their respective rights; and that said mining claims may be partitioned, and to that end a sale may be had, and the proceeds distributed among the respective owners according to their respective interests therein.   Defendant, Norrie, answers, denying the averments of the complaint as made, and then, as a ground for affirmative equitable relief sets up the facts as substantially found by the Court, with the exception hereinafter noticed, and seeks to charge the plaintiff as trustee for his benefit, to the extent of one undivided third, and asks that plaintiff be adjudged to convey to defendant.

The facts, as found by the Court, are as follows: In April, 1860, J. Pollard, S. Dempsey, and O. M. Loveridge, being then the owners of the claims in question, mortgaged them to one Seiden, to secure the payment of two thousand five hundred dollars, and interest at two per cent per month. In January, 1863, defendant, Norrie, purchased and took a conveyance of Dempsey's interest, being an undivided third, and he has been in possession ever since, and has never sold or conveyed it.   Plaintiff and Wood appear to have become owners, respectively, of the other two interests, the plaintiff

having purchased in July, 1864. In July, 1865, Seiden obtained a judgment foreclosing his mortgage, under which the claims were sold in August, 1865, and Seiden became the purchaser and received the Sheriff's certificate of sale. There was a redemption from this sale of the undivided third owned by defendant, Wood, but no redemption of the third owned by Norrie, or by plaintiff. "On the 10th of November, 1865, Seiden assigned his certificate of sale to the plaintiff, and on the 14th of February, 1866, no redemption having been made except by Wood, as aforesaid, and the time for redemption having expired, the plaintiff received a deed from the Sheriff of the said two thirds of said defendant, Norrie, and of plaintiff. Plaintiff paid Seiden for the certificate three thousand five hundred dollars in gold coin. Defendant, Norrie, was a party defendant in the Seiden foreclosure sale, and was a redemptioner under the said Sheriff's sale. *About the time* plaintiff received the assignment of the certificate from Seiden, it was agreed and understood by and between plaintiff and defendant, Norrie, that the certificate *should* be purchased for three thousand five hundred dollars; that Norrie *should advance* his portion, viz: one third of the purchase money; that the assignment *should be taken* in the name of plaintiff for the benefit of both; and that when the time for redemption should have expired, the plaintiff *should take and receive* the deed from the Sheriff in his (plaintiff's) own name, and should hold the undivided one third of said premises for said defendant, Norrie, and should convey the same to said Norrie upon demand, and after settlement and payment by Norrie to plaintiff of all advances made upon said claims by the latter over and above his proportionate share. *At the time of this agreement* Norrie advanced and paid to plaintiff the sum of one thousand seven hundred dollars, in gold coin, to be applied on the purchase of the certificate. This was more than Norrie's share; and the balance was to be applied on another lien on the property held by one Henderson. As a matter of fact, plaintiff had actually purchased the certificate of sale from Seiden a few days before the

above agreement was made; but this circumstance was not known to defendant, Norrie, at the time. Defendant, Norrie, relied on the good faith and validity of this agreement during the redemption period, and until after it had expired, and remained in possession. Before the commencement of this suit defendant, Norrie, tendered to plaintiff the amount due upon an accounting between them as owners in said Caledonia claims."

The Court found nothing in the evidence to show "that the property was held or worked differently from the claims of ordinary mining companies in California."

By consent of parties the right to the interest in question was first tried and determined.

The Court, as a conclusion of law, finds that the plaintiff holds the legal title to one undivided third in trust for defendant, Norrie, and by its judgment, directs a conveyance to be made. Plaintiff appeals, and in a very elaborate, ingenious, and able argument, his counsel insist that there is no resulting trust, and, consequently, that the case is within the Statute of Frauds, on the ground that it is found by the Court that the plaintiff actually purchased the certificate of Sheriff's sale from Seiden a few days before the agreement between him and defendant was made; that the equitable, conditional estate, therefore, vested in plaintiff by the purchase of the certificate of sale, leaving only the naked legal title in the defendant to the judgment, which became absolute by the lapse of time, and subject to be finally divested by the Sheriff's deed, and, as there was no resulting trust vested at the moment of the purchase of the certificate, in accordance with well settled principles, none could arise by virtue of an agreement, in point of fact, subsequently made.

We see no difficulty, however, under the circumstances of the case, in sustaining the judgment on this point, without trenching upon the principles established by any of the authorities cited.

We think the plaintiff cannot now be heard to say, that he made the purchase prior to the arrangement made with

the defendant. It does not appear, when he paid the money, or that he paid for the certificate originally with his own money. But suppose he did. We do not think it would affect the question.

The agreement found by the Court was made "*about the time* plaintiff received the assignment of the certificate from Seiden," and it was, "that the certificate *should* be purchased for three thousand five hundred dollars; that Norrie *should* advance his proportion, viz: one third of the purchase money; that the assignment *should* be taken in the name of plaintiff for the benefit of both."

This agreement contemplated a future, not a past transaction. It did not purport to relate to an interest in a purchase already made by plaintiff, but to the purchase, on joint account, of an interest still held by Seiden. This is the basis upon which the arrangement was made, and upon this view, "*at the time of this agreement* Norrie advanced, and paid to plaintiff the sum of one thousand seven hundred dollars in gold coin, to be applied on the purchase of the certificate." Now, if plaintiff had actually received the assignment, and paid for it, before this agreement, "this circumstance was not known to defendant, Norrie, at the time." He then deliberately misled Norrie, entered into the agreement as though the purchase had not yet been made, and received Norrie's share of the purchase money upon that basis, and for the purposes of this action the purchase must be taken as though it had been made in fact after, and in pursuance of the agreement. If plaintiff could be heard to say, under these circumstances, and contrary to his own acts and representations, that the purchase was made, and the title vested in him before that time, and consequently, that there was no resulting trust, the Statute of Frauds would become the instrument by which as great a fraud would be perpetrated as any which it is likely to prevent. There was no redemption by Norrie, and none was necessary, for he was entitled to rely upon his agreement with plaintiff. Feeling perfectly secure under his agreement, he did not redeem. If he fails now to establish a

trust, he will be deprived of the property through the act of plaintiff in knowingly misleading him, and inducing him to enter into an agreement upon a supposed state of facts which plaintiff knew did not exist.

It is argued, however, that in this view the judgment is not according to the allegations, and that there can be no recovery except in strict accordance with the averments of the answer. The allegation, it is true, is that the purchase from Seiden was after this agreement, and made in pursuance of it, and nothing is said in the answer of want of notice of the prior purchase, and in this respect the allegations are different from the findings. It was developed in the evidence, and so found, that plaintiff had made the purchase a few days before, and then made the agreement with defendant without notice to him, and received from defendant his share of the purchase money, as though the act of purchase was still to be performed. This is a technical variance as to one circumstance of the fraud, which was peculiarly within the knowledge of the plaintiff. But the contract, as made by the parties, also as performed on the part of the defendant, and as he supposed it to be performed by plaintiff, and we have seen, as he has a right to claim it to be in fact, is correctly alleged. It does not appear that any objection was made on the ground of variance before the judgment in the Court below. Had the point been then made, this technical objection might have been obviated by amendment. The plaintiff could not have been surprised, and the variance as to one circumstance of the transaction is not of sufficient importance to justify us in reversing the judgment upon this point raised here for the first time.

Judgment affirmed, and remittitur directed to issue forthwith.