[S. F. No. 191.    Department One.—June 5, 1896.]

## ANN MURPHY, RESPONDENT, *v.* EDWARD W. CLAYTON, ADMINISTRATOR, ETC., ET AL., APPELLANTS.

ESTATES OF DECEASED PERSONS — ENFORCEMENT OF RESULTING TRUST.— Where land, the title to which was in a deceased person, was paid for one-half by the decedent, and one-half by another person, such other person may enforce a resulting trust in one-half of the property, as against the administrator and general creditors of the decedent.

ID.—GENERAL CREDITORS OF DECEASED PERSON NOT PROTECTED.—Although a creditor who purchases land held in trust under an execution sale, without notice of the equity, will be protected as a *bona fide* purchaser, yet the general creditors of a deceased trustee who are neither purchasers nor lienholders upon the trust property, are not protected against the equity of the beneficiary of the resulting trust, merely because they may have advanced money in part on his credit as a holder of the property which stood in his name.

ID.—PERMITTING TITLE TO STAND IN NAME OF TRUSTEE—PUBLIC POLICY— ENFORCEMENT OF TRUST—EQUITY—ESTOPPEL NOT FAVORED.—There is nothing illegal or against public policy in the mere fact that a person equitably entitled to real property permits the legal title to remain in another, nor is such person estopped from asserting his equity, and enforcing the trust as against the administrator and creditor of the deceased trustee, where no act of such person induced the creditor to give credit to the decedent; and as equity does not favor estoppels, it will act in the enforcement of the trust according to the verity of the fact.

ID.—RESULTING TRUSTS—KNOWLEDGE OF LAW—PRESUMPTION.—Resulting trusts are fully recognized by the law; and everyone is presumed to know the law.

APPEAL from a judgment of the Superior Court of Santa Clara County.   JOHN REYNOLDS, Judge.

The facts are stated in the opinion.

*Kittredge & Kraft,* and *Rhodes & Barstow,* for Appellants.

The defendant, as the legal representative of the creditors of the deceased debtor, can assert the priority of their claims over the secret equity of plaintiff.   (*Riley v. Martinelli,* 97 Cal. 575; 33 Am. St. Rep. 209; *Hildreth v. Sands,* 2 Johns. Ch. 45–8.)   A creditor, without any inducement to give credit on the faith of his debtor's apparent ownership, may proceed on his debt to judgment, execution, sheriff's sale, and purchase by himself

of the property, and hold it against the real owner, of whose claim he had no notice at the time of purchase, though he may acquire such notice before sheriff's deed finally passes to him. (*Riley* v. *Martinelli, supra; Gower* v. *Doheney,* 33 Iowa, 36; *Page* v. *Rogers,* 31 Cal. 301.) The right of possession by the administrator of the property of the deceased is for the payment of debts, and is a lien of the creditors. (*Chapman* v. *Hollister,* 42 Cal. 463; *Janes* v. *Throckmorton,* 57 Cal. 387; *Beckett* v. *Selover,* 7 Cal. 238; 68 Am. Dec. 237; *Meeks* v. *Hahn,* 20 Cal. 627; *Estate of Woodworth,* 31 Cal. 604; *Brenham* v. *Story,* 39 Cal. 185, 186, 188; *Phelan* v. *Dunne,* 72 Cal. 230; *Smith* v. *Olmstead,* 88 Cal. 586; 22 Am. St. Rep. 336.) The administrator as an encumbrancer in good faith, and for a valuable consideration, has acquired a lien by an instrument first recorded, and comes within the protection of the statute. (Civ. Code, sec. 1107.)

*George W. Lewis,* and *J. H. Campbell,* for Respondent.

The consideration having been paid by respondent, and the deed having been executed to appellant's intestate, it follows that a resulting trust arose in the land so conveyed, in favor of the respondent. (*Olcott* v. *Bynum,* 17 Wall. 44; *White* v. *Carpenter,* 2 Paige, 217, 241; *Buck* v. *Swazey,* 35 Me. 41; 56 Am. Dec. 681; *Osborne* v. *Endicott,* 6 Cal. 149; 65 Am. Dec. 498; *Hidden* v. *Jordan,* 21 Cal. 92; *Bayles* v. *Baxter,* 22 Cal. 575; *Simson* v. *Eckstein,* 22 Cal. 580; *Millard* v. *Hathaway,* 27 Cal. 119; *Sandfoss* v. *Jones,* 35 Cal. 481, 489; Perry on Trusts, sec. 133; 2 Pomeroy's Equity Jurisprudence, sec. 1037.) As respondent paid only an aliquot part of the consideration, a trust arose in her favor as to an undivided one-half thereof. (*Case* v. *Codding,* 38 Cal. 191; *Somers* v. *Overhulser,* 67 Cal. 237; *Hidden* v. *Jordan,* 21 Cal. 92.) The property owned by decedent at the time of his death—and no other property—became the estate of decedent, and vests in the heirs (Civ. Code, secs. 1384, 1452); and that property only is charged with the payment of his debts. (Civ. Code, secs. 1358, 1515.) A

beneficial interest in land may be held under a result-
ing or secret trust. (Civ. Code, secs. 852, subd. 3, 853;
*Osborne* v. *Endicott, supra; Hidden* v. *Jordan, supra;
Bayles* v. *Baxter, supra; Simson* v. *Eckstein, supra; Mil-
lard* v. *Hathaway, supra; Bludworth* v. *Lake,* 33 Cal. 255;
*Currey* v. *Allen,* 34 Cal. 254; *Dikeman* v. *Norrie,* 36 Cal.
94; *Case* v. *Codding,* 38 Cal. 191; *Davis* v. *Baugh,* 59
Cal. 568; Perry on Trusts, sec. 133; 2 Pomeroy's Equity
Jurisprudence, sec. 1037.) The only penalty that can
attach to a beneficiary of a resulting or secret trust is
that, should the trustee sell or mortgage the land for
value, and without notice of the trust, such purchaser
or mortgagee would be protected, and the beneficiary's
equitable estate in such land would be cut off and
destroyed. (Civ. Code, sec. 856; *Scott* v. *Umbarger,* 41
Cal. 410; *Blight* v. *Banks,* 17 Am. Dec. 151; *Lehman* v.
*Lewis,* 62 Ala. 129; *Flynt* v. *Hubbard,* 57 Miss. 471;
*Catherwood* v. *Watson,* 65 Ind. 576; *Haggard* v. *Benson,*
3 Tenn. Ch. 268; *Davis* v. *Baugh, supra;* 2 Pomeroy's
Equity Jurisprudence, sec. 1043.) The creditors of
Murphy were bound "at their peril," to know the law of
secret and resulting trusts. (*Lyon* v. *Richmond,* 2 Johns.
Ch. 59; *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 642;
*Bilbie* v. *Lumley,* 2 East, 472; *Pullham* v. *Down,* Esp. 26;
*Brisbane* v. *Dacres,* 5 Taunt. 144; *Clarke* v. *Dutcher,* 9
Cow. 674.) To constitute an estoppel, the party claim-
ing the benefit of it must be destitute of the knowledge
of his own legal rights, and of the means of acquiring
such knowledge; that it must also be shown that the
person sought to be estopped has made an admission, or
done an act, with the intention of influencing the con-
duct of another, or that he had reason to believe would
influence his conduct inconsistent with the evidence he
proposes to give, or the title he proposes to set up; that
the other party has acted upon, or been influenced by,
such act or declaration; that the party so influenced
will be injured by allowing the truth of the admission
to be disproved. (*Lux* v. *Haggin,* 69 Cal. 266; *Breeze* v.
*Brooks,* 71 Cal. 169; 97 Cal. 72.)

VANCLIEF, C.—This is an action to establish a result-
ing trust in land. The cause was tried by the court
without a jury. Defendant Clayton, administrator, etc.,
appeals upon the judgment-roll.

The following is a condensed statement of the find-
ings of fact: The land described in the complaint was
conveyed to D. J. Murphy on the thirty-first day of
August, 1887, upon the consideration of twenty-three
thousand dollars then paid by said D. J. Murphy and
the plaintiff jointly, plaintiff paying one-half thereof,
namely, eleven thousand five hundred dollars, from her
separate property and estate; from the date of said con-
veyance till on or about the twentieth day of June, 1893,
when said D. J. Murphy died, said land was of record in
his name; said conveyance was made to him with the
knowledge and consent of plaintiff; from the date of
said conveyance to the time of his death the premises
remained in the apparent sole possession and owner-
ship of said Murphy, and was managed and dealt with
by him as apparently the sole owner thereof, with the
plaintiff's knowledge and consent; the plaintiff (his
mother), and the defendant Kate Murphy (his wife),
were his only heirs at law; the defendant Clayton, by
an order of court duly made on the twenty-first day of
July, 1893, was appointed administrator of the estate of
said D. J. Murphy, and from thence hitherto has been
the duly qualified and acting administrator of said
estate; upon qualifying he took possession of and still
holds the whole of said land, claiming that it is a part
of said estate; a notice to creditors was duly published
on the twenty-seventh day of July, 1893; within ten
months thereafter claims against said decedent aggre-
gating ninety thousand dollars were presented and
allowed by said administrator and the judge of the
court; said estate is insolvent if the half of the property
claimed by the plaintiff be excluded therefrom; the
financial standing and credit of said D. J. Murphy were
good, and were based on his real estate holdings and
other properties standing in his name, including the

premises in dispute, and his indebtedness was contracted without notice to his creditors of the plaintiff's secret equity in said premises.

The consideration for the land having, at the time of the purchase, been paid, half of it by appellant's intestate and half of it by the respondent, and the title taken by the former, a resulting trust arose in the land in favor of respondent for the undivided one-half thereof, that proportion being an aliquot part of the consideration. · (*Olcott* v. *Bynum,* 17 Wall. 44; *Buck* v. *Swazey,* 35 Me. 48; 56 Am. Dec. 681; *Woodside* v. *Hewel,* 109 Cal. 484; *Somers* v. *Overhulser,* 67 Cal. 237; *Davis* v. *Baugh,* 59 Cal. 573; *Case* v. *Codding,* 38 Cal. 193; *Dikeman* v. *Norrie,* 36 Cal. 101; *Hidden* v. *Jordan,* 21 Cal. 99; *Osborne* v. *Endicott,* 6 Cal. 149; 65 Am. Dec. 498; Perry on Trusts, sec. 127, et seq; 2 Pomeroy's Equity Jurisprudence, sec. 1038, and numerous authorities there cited.)

It is insisted by the appellant that he, as the representative of the creditors of the deceased debtor, can assert the priority and superiority of their claims over the secret equity of the plaintiff, under the rule declared in *Riley* v. *Martinelli,* 97 Cal. 575; 33 Am. St. Rep. 209. In that case, the apparent right and title of the debtor was sold under execution upon an indebtedness arising from a deficiency remaining after a sale in foreclosure. It was there held that "a judgment creditor purchasing at his own sale, equally with a third party making a purchase under the execution, is protected against latent equities of which he had no notice." Meaning, of course, of which he had no notice at the time of the sale. Further, it was said: "The plaintiff cannot be said to be in a better position than she would have been had she held an unrecorded conveyance of the property. It was in her power for many years to have enforced her equitable right to the property; but, having failed to do so *until a sale thereof,* and recording of the evidence of such sale under an execution against her husband, who was the ostensible owner thereof, and in

whose name the title was recorded, she comes too late to ask for relief against one clothed with the legal title and an equal equity." The decision proceeds upon the principle that the execution creditor, because he *purchased* the property *without notice* of the latent equity, was protected by the provisions of section 1107 of the Civil Code. That section gives a *bona fide* purchaser or encumbrancer, without notice, the right to hold against a prior purchaser having an unrecorded deed. The principle is familiar. In *Bass* v. *Wheless*, 2 Tenn. Ch. 535, it was held that, unless a *purchaser* has notice of the resulting trust, he takes the property freed of the equity of the *cestui que trust,* and that the advance of money on a mortgage is *pro tanto* a sale, " and gives such a mortgagee, to the extent of the money advanced, all the rights of a *bona fide* purchaser for value and without notice." So, also, in *Haggard* v. *Benson*, 3 Tenn. Ch. 278.

In *Catherwood* v. *Watson*, 65 Ind. 576, it was held that the resulting trust must give way to the creditor, who *purchased the property under execution,* because of a statute of that state, which reads: " No such trust, whether implied or created, shall defeat the title of the purchaser for a valuable consideration, and without notice of the trust."

A resulting trust, being a purely equitable interest, is cut off and destroyed as against all *bona fide* purchasers or mortgagees from the trustee for a valuable consideration and without notice. (2 Pomeroy's Equity Jurisprudence, sec. 1043; *Lehman* v. *Lewis*, 62 Ala. 129; *Flynt* v. *Hubbard*, 57 Miss. 471.)

In *Scott* v. *Umbarger*, 41 Cal. 419, it is decided that one who purchases land from another who acquired the title fraudulently, and thereby became a trustee, in order to protect himself, must have been ignorant of any of the facts constituting the fraud, not only at *the time of his purchase,* but *when he paid the purchase money* and obtained his deed.

It is claimed here that the appellant stands in the re-

lation of an encumbrancer by reason of his administra-
torship, which gives him a right to the possession of all
the decedent's estate for the purposes of administration
and for the payment of debts; which right of possession
has been recognized as a *lien* by this court in *Beckett* v.
*Selover,* 7 Cal. 238; 68 Am. Dec. 237; *Brenham* v. *Story,*
39 Cal. 186, 188; *Smith* v. *Olmstead,* 88 Cal. 586; 22 Am.
St. Rep. 336.   But it will be observed that in all these
cases, as well as in the sections of the Code of Civil
Procedure applicable to the estates of deceased persons,
the possession and lien mentioned relate to the estate of
*the decedent,* and not to that which he held in trust for
others.   The decedent, D. J. Murphy, was the owner of
but a moiety of the property, the other moiety belonging
to the respondent.

Neither the appellant nor any creditor of the dece-
dent stands in the relation of purchaser or mortgagee of
the property.   Counsel for appellant does not mention
any case which extends the doctrine of the cited cases
or applies section 1107 of the Civil Code to mere credit-
ors who have not advanced money on mortgage, or pur-
chased at a sale; and I have been able to find no such
case, and am of the opinion that the decision in *Riley*
v. *Martinelli, supra,* cannot be considered applicable
here.

The question remains: Does the finding that the con-
veyance was made to D. J. Murphy, and that from the
date thereof to the time of his death he was in the
apparent sole possession and ownership, managing and
dealing with the property as his own, with respond-
ent's knowledge and consent, coupled with the finding
that his credit was based, in part, upon the fact that the
property stood in his name, and his indebtedness was
contracted without notice to his creditors of respond-
ent's equity, estop the respondent, and cut off that
equity?

I do not think the facts found tend to establish such
estoppel.   They show no act, conduct, or admission upon
the part of the respondent by which the creditors were

induced to give credit to the decedent. They do not show even that any of the creditors knew that the title to the property stood in his name, or that means were taken by any of them to ascertain the true state of the title.

In *Lux* v. *Haggin*, 69 Cal. 266, the court said: "To constitute the estoppel the party claiming the benefit of it must be destitute of knowledge of his own legal rights, and of the means of acquiring such knowledge. (*Biddle Boggs* v. *Merced etc. Co.*, 14 Cal. 279; *Stockman* v. *Riverside etc. Co.*, 64 Cal. 57; *Morrill* v. *St. Anthony Falls*, 26 Minn. 222.) To constitute such an estoppel it must also be shown that the person sought to be estopped has made an admission or done an act, *with the intention* of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposes to give, or the title he proposes to set up; that the other party has acted upon or been influenced by such act or declaration; that the party so influenced will be prejudiced by allowing the truth of the admission to be disproved. (*Brown* v. *Bowen*, 30 N. Y. 519; 86 Am. Dec. 406; *Plumb* v. *Cattaraugus County Mut. Ins. Co.*, 18 N. Y. 392; 72 Am. Dec. 526.")

Equity does not favor estoppels; and I see no reason why this case should not be determined according to the verity of the fact. (Perry on Trusts, sec. 416.)

In *Lord* v. *Bishop*, 101 Ind. 334, where a husband received money from his wife's mother to be invested in lands for the wife, and took title in his own name, and held it *thirty-three years*, and then, when in debt, put the title in his wife, having during that time paid the taxes, and by his labor cleared and improved the land, it was held that equity would not subject it to the payment of his debts. The court said: "Taking the title in his own name made the husband as much her trustee as though he had received the money directly from his wife's hand. It was not for the husband to take to himself the benefaction which the mother intended to bestow

upon her daughter, and his creditors can stand in no better attitude than he stood himself. (*Brookville Nat. Bank* v. *Kimble*, 76 Ind. 195; Perry on Trusts, sec. 127.) "That the husband spent his time and labor in clearing and improving the land, and that he paid the taxes, does not alter the case. The fact remains that it was his wife's land, and he could not improve it away from her."

It is true that in that case the husband took the title in his own name, without his wife's knowledge or consent; but that fact does not seem to have been considered important. The wife had had ample time to ascertain the fact, and to have had the legal title transferred to herself.

The reasoning of the court in *Breeze* v. *Brooks*, 71 Cal. 169, more nearly applies to this case than that of any other case I have found. The decree of the court below adjudged that a deed made by John Brooks to his brother and codefendant, Patrick Brooks, was fraudulent and void, and that Patrick took the legal title thereunder in trust for John and his successors in interest, and that he holds the same in trust for the plaintiffs, who were creditors of John and purchasers at a sheriff's sale of the land conveyed, under a judgment in their favor against John. The court said: "From the findings, it plainly appears that John had nothing except a naked legal title. Patrick had paid all the money for the land, and John, therefore, held it in trust for him." John "never, so far as Patrick knew, asserted any title adverse to Patrick's, and Patrick's right to assert his claim thereto was not barred, and John only conveyed to Patrick that which belonged to him.

"The findings negative the idea that the plaintiffs, in giving credit to John, relied on any statement of Patrick that John owned the land; nor is it there intimated that they examined the records of deeds . . . . to find out what they disclosed in reference to John's title, or relied on them in any way to induce the credit which they extended to John. They seem to have relied on the

facts that John lived on the land, claimed it in his conversations with them as his, and that he was insolvent, and Patrick knew it. . . . .

"Therefore, it does not appear that the deed from John to Patrick was made to hinder, delay, or defraud creditors; it was simply made to reinvest Patrick with the legal title to his own land." Held, that the purchaser at execution sale got no title, " as a purchaser at such sale can get no title save that of the judgment debtor," and that the findings, therefore, did not justify the decree. (See the same case, upon a second appeal, reported in 97 Cal. 72.)

There is nothing illegal or against public policy in the mere fact that a party equitably entitled to real property permits the legal title to remain in another; resulting trusts are fully recognized by our law; and every one is presumed to know the law. (*Clarke* v. *Dutcher*, 9 Cow. 681–84; *San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 642.)

I think the judgment of the court below legally results from the findings of fact, and, therefore, should be affirmed.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.