[L. A. No. 1601.  Department One.—February 28, 1907.]

## N. S. MARTINOVICH, Appellant, v. P. MARSICANO, Respondent.

ATTACHMENT—LEVY UPON REAL PROPERTY DEVISED—LIEN NOT AFFECTED BY DISTRIBUTION.—If an attachment is properly levied upon real property devised by the will of a deceased testator, the lien created thereby is unaffected by the subsequent decree of distribution

thereof. The attaching creditor of the devisee was not required to present his claim to the probate court, and was not entitled to participate in the distribution of the estate; but the property distributed continued to be subject to the lien of the attachment if legally levied thereupon.

ID.—SHERIFF'S DEED UNDER EXECUTION—RELATION TO ATTACHMENT LEVY.—A sheriff's deed executed in pursuance of an execution sale under a judgment rendered in an attachment suit relates back to and takes effect from the levy of the attachment, if sufficient to create a lien.

ID.—PREVALENCE OF TITLE—DISTRIBUTION TO GRANTEE OF DEVISEE—DEED AFTER ATTACHMENT LEVY.—A sheriff's deed under an execution sale to the defendant, which relates to the date of an attachment levy, in a suit against the original devisee, will prevail over the title of the plaintiff, who took distribution as grantee of the devisee, where the deed of the devisee to the plaintiff was executed after the attachment levy.

ID.—AFFIDAVIT AND BOND FOR ATTACHMENT—WRITS TO DIFFERENT COUNTIES AT DIFFERENT TIMES.—Several writs of attachment to different counties, though they may be issued at the same time, are not required to be so issued; but writs to different counties may be issued at different times on the same affidavit and bond, provided they are issued within a reasonable time after the making and filing of the affidavit.

ID.—TIME FOR WRIT NOT PRESCRIBED — DELAY FOR "UNREASONABLE TIME."—Our statute does not prescribe the time within which, after the making and filing of the affidavit, a writ of attachment may legally issue, nor limit the force and effect of the affidavit to any specified time after its execution, if the writ be not delayed thereafter for an "unreasonable time," whereby is meant such delay as would, under the circumstances, cast suspicion on the verity of the affidavit, or lead to the supposition that the ground stated for the attachment had ceased to exist.

APPEAL from a judgment of the Superior Court of San Bernardino County. F. F. Oster, Judge.

The facts are stated in the opinion of the court.

James H. Boyer, for Appellant.

Naphtaly, Freidenrich & Ackerman, and Waters & Wylie, for Respondent.

ANGELLOTTI, J.—This is an action to quiet title, involving an undivided half of the northeast quarter of the northeast.

quarter of section 10, Township 1 south, range 7 west, San
Bernardino base and meridian, in San Bernardino County.
From a judgment therein in favor of defendant the plaintiff
appeals.

Cerverio Martinovich died testate on February 6, 1889, the
owner of the property above described. By the terms of his
will, the undivided one half thereof in controversy was devised
to his widow, Sophia Martinovich. On December 1, 1897,
defendant commenced an action in the superior court of the
city and county of San Francisco against said Sophia Martino-
vich. On December 16, 1897, he filed in said action an affidavit
and an undertaking for attachment in regular form, and on
that day a writ of attachment was regularly issued from said
court, directed to the sheriff of the city and county of San
Francisco. On December 18, 1897, without filing any new
affidavit or undertaking, he procured to be issued by said
clerk another writ of attachment in said action, directed to
the sheriff of San Bernardino County. Under this writ, the
property involved was attached on December 20, 1897, by the
sheriff of San Bernardino County, in the manner provided by
law. On February 14, 1898, no motion to dissolve said attach-
ment ever having been made, judgment was given in said
action in favor of this defendant and against Sophia Martino-
vich for $3,083.19, and a transcript of the original docket of
this judgment, duly certified, was filed and recorded in the
office of the county recorder of San Bernardino County on
April 8, 1898. On June 30, 1898, execution was duly issued
out of the superior court of the city and county of San
Francisco, and levied by the sheriff of San Bernardino County
on this property, and he, after due notice, on July 25, 1898,
sold the property at public sale to defendant. No redemption
having been made, said sheriff, on December 16, 1899, executed
a deed for the property to defendant.

In the mean time, on March 29, 1898, which was after the
attempted levy and the judgment, but prior to the filing of
the transcript of the docket in San Bernardino County, Sophia
Martinovich executed and delivered a conveyance of the prop-
erty to plaintiff. This deed was not recorded until February
20, 1903. On March 30, 1898, a decree of final distribution in
the matter of the estate of Ceverio Martinovich was made by
the superior court of the city and county of San Francisco,

and by this the property here involved was distributed to plaintiff, it being recited in the decree that it had been made to appear to the court that said Sophia had transferred the same to plaintiff. This decree was entered in the minutes of the court April 21, 1898, and a certified copy thereof was recorded in the office of the county recorder of San Bernardino County on June 25, 1898, which was before the sheriff's sale.

Upon these facts judgment was properly given for defendant.

Such rights as defendant may have had under the attachment levy were in no way affected by the decree of distribution. He was not required to present his claim in this behalf to the probate court and was not entitled to participate in the distribution of the estate, and the property distributed continued to be subject to the lien of his attachment, if the property had been legally attached, which for the present we assume to have been the case. (See *Martinovich* v. *Marsicano,* 137 Cal. 354, [70 Pac. 459].)

Concededly, a sheriff's deed executed in pursuance of an execution sale under a judgment rendered in an attachment suit relates back to and takes effect from the levy of the attachment, if the levy was such as to create a lien. (*Porter* v. *Pico,* 55 Cal. 165, 171; *Godfrey* v. *Monroe,* 101 Cal. 224, [35 Pac. 761]; *Woodward* v. *Brown,* 119 Cal. 283, 306, [63 Am. St. Rep. 108, 51 Pac. 2, 542].) If the attachment was valid, plaintiff therefore acquired the property from Sophia Martinovich subject thereto, and subject to the subsequent proceedings to enforce the judgment recovered against her.

Plaintiff claims that there was no valid attachment as to this property, for the single reason that the San Bernardino writ was issued by the clerk without the giving by plaintiff of any additional affidavit or undertaking. Manifestly, it was considered sufficient that an affidavit showing a proper case for an attachment and an undertaking in due form had been filed two days before. We have no doubt that such affidavit and undertaking constituted a sufficient legal basis for the writ. It is not claimed that several writs may not be issued upon a single affidavit and undertaking to the sheriffs of different counties. That this may be done is clearly shown by the statute. (Code Civ. Proc., secs. 537-540.) But it is

contended that all writs so issued must be issued at the same time. This contention is based upon the fact that sections 538 and 539 of the Code of Civil Procedure require the clerk to issue the writ upon receiving the affidavit and undertaking, and that section 540 of the Code of Civil Procedure, after declaring that the writ must be directed to the sheriff of any county in which property of the defendant may be, and in terms require him to attach and safely keep all property of the defendant within his county not exempt from execution, provides: "Several writs may be issued at the same time to the sheriffs of different counties." This provision of section 540, as we read it, was intended solely in aid of the plaintiff in attachment, and the whole purpose was to authorize such a plaintiff to have at one time two or more writs addressed to sheriffs of different counties, so that property of the defendant in various counties necessary to secure the plaintiff's claim may be levied on under the one proceeding for attachment instituted by him. The plaintiff in attachment is, by virtue of the showing made and security given, entitled to have as many writs issued to different sheriffs as he may see fit to demand. All writs so demanded and issued constitute parts of the one proceeding to have the property of the defendant in the state levied on as security for any judgment that may be obtained, and have for their basis the affidavit and undertaking given to secure the remedy of attachment. If by his first demand he has failed to ask for and secure a writ for a county in which he almost immediately thereafter discovers attachable property necessary to his security, no good reason is apparent why he may not reach such property by procuring what he would have been entitled to as a matter of right in the first instance by including it in his demand to the clerk, thus accomplishing the same result that he would be enabled to obtain as to property subsequently discovered in a county for which a writ had issued, before the return of the attachment, by a simple direction to the sheriff. The mere fact that a writ has been issued as to one county of the state should not deprive the plaintiff of his right to a writ for any other county, and the statute does not, in our opinion, have any such effect. Such fact does not detract from the power and duty of the clerk to issue, upon the affidavit and undertaking already filed, writs to other counties as demanded.

It is urged that if the statute be so construed as to authorize a second writ subsequent to the issuance of the first, conditions may have so changed in the mean time that the affidavit no longer speaks the truth as to the matters essential to the right of attachment. This, however, would be true as to any writ of attachment issued. It has not been attempted to prescribe by our statute the time within which, after the making or filing of the affidavit, a writ may legally issue, nor to limit the force and effect of the affidavit to any specified time after its execution. Some time must, from the nature of things, elapse between the making of the affidavit or its filing, and the issuance of any writ, during which time, however short, a change *may* occur as to some fact required to be alleged in such affidavit. It is impossible to absolutely prevent this, as successive steps in a proceeding cannot be contemporaneously taken. The mere requirement that all writs issued should be concurrently issued would not absolutely prevent it. It was said in *Wheeler* v. *Farmer,* 38 Cal. 203, 215, that an objection that an affidavit for attachment was made before the commencement of the suit was manifestly untenable, and that there was no valid objection to a complete preparation of all the papers requisite to the writ before the complaint was prepared. It has been said elsewhere that, as the ground of attachment must exist at the time the warrant of attachment was issued, an unreasonable time should not be allowed to elapse between the making of the affidavit and the issuance of a writ. By the term "unreasonable time," as herein used, is meant such delay as would under the circumstances cast suspicion on the verity of the affidavit, or lead to the supposition that the ground stated for the attachment had ceased to exist. (See *Kesler* v. *Lapham,* 46 W. Va. 293, [33 S. E. 289], and cases there cited.) We think that as to this particular matter the true rule, in the absence of statute to the contrary, is as stated in *Hadden* v. *Linville,* 86 Md. 210, [38 Atl. 900], where the objection was to the jurisdiction for the reason that the affidavit was made several months before the issuance of the attachment, the appellant insisting that the affidavit must be made either at the time of the institution of the suit or as shortly before as conveniently might be. The court said: "But while we are of opinion that there may be such delay

between the making of the affidavit and the suing out of the writ as may reasonably induce a presumption, when taken in connection with other facts properly proven, that the process of the court is being abused, or that the facts set forth in the affidavit may not be true when the suit is instituted, yet we do not think such divergence of dates is a jurisdiction matter, that will enable this court on appeal, to consider the question in a case like the one at bar, where the point was not raised and considered below on appropriate motion or plea.'' This is as applicable to a second writ issued to another county after the issuance of the first writ, as it is to a case of delay between the making of the affidavit and the procuring of the first writ. The protection afforded by the law to the defendant against an improper attachment is as broad in the one case as in the other. In each, no jurisdictional defect being apparent on the face of the proceeding, his only remedy, under our system, is a motion to set aside the attachment, and·on this motion the showing made by the affidavit in support of the judgment can be assailed, and the attachment which has been improperly issued discharged. (Code Civ. Proc., secs. 556-558.) The reason advanced by plaintiff in support of the construction of section 540 contended for by him appears to us to be without force.

The San Bernardino writ of attachment must here be held to have been legally issued. Admittedly, the levy thereunder was in full compliance with the statute. The attachment proceedings operated, therefore, to render the subsequent sheriff's deed effectual from the date of the levy, and paramount to plaintiff's deed from Sophia Martinovich, executed subsequent to such levy.

The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.