[L. A. No. 15214. In Bank.—September 29, 1936.]

T. D. McGEE, Respondant, v. LELAND J. ALLEN, Appellant.

SOUTHWESTERN CREDITORS ASSOCIATION a Corporation), Respondent, v. LELAND J. ALLEN, Appellant.

MARY ALICE BECKSTEAD, Respondent, v. LELAND J. ALLEN, Appellant.

Leland J. Allen, *in pro. per.*, and Lucien J. Clarke for Appellant.

Aubrey M. Finley, David C. Levenson and Fred N. Arnoldy for Respondents.

SEAWELL, J.—The above entitled three actions were jointly tried, but separate findings and judgments were entered in each case. All three actions concern the same property, consisting of a ranch in Santa Barbara County, which constituted a part of the residue of the estate of La Torre Webster on his death on August 27, 1928. Leland J. Allen, a defendant in all three actions, appeals from judgments which decreed that he had no right, title or interest in said property.

By his will La Torre Webster bequeathed to his son, T. Dean Webster, an undivided one-fourth interest in the residue of his estate, and to his daughter, Mary Alice Beckstead, an undivided three-fourths interest. Appellant Allen contends that T. Dean Webster was indebted to him for legal services rendered over a period of years, both before and after the death of La Torre Webster, and by virtue of an oral understanding between Allen and T. Dean Webster the latter upon the death of his father held his share of his father's estate in trust for Allen. In execution of this trust Webster assigned his interest in his father's estate to Allen by instruments in writing on February 13, 1932, and on November 23, 1932, executed a deed conveying to Allen his interest in the ranch property which is the subject of this action. The court below found that said instruments and deed were executed with intent to hinder, delay and defraud creditors of T. Dean Webster, and adjudged them void.

Respondent T. D. McGee is an attachment and judgment lien creditor of T. Dean Webster. As to the first of the several judgments held by McGee he procured an execution sale to be held on the interest of T. Dean Webster in the ranch property and at said sale purchased Webster's interest for the amount owing on said judgment. McGee thereafter brought one of the actions involved on these appeals to establish his interest in the ranch property. Respondent Southwestern Creditors Association, also a judgment creditor of T. Dean Webster, brought a similar action. The

third of the actions involved in the instant appeals is a partition suit wherein Mary Alice Beckstead, daughter of La Torre Webster, deceased, is plaintiff.

By the decree of distribution in the estate of La Torre Webster, rendered on December 19, 1932, an undivided three-fourths interest in the residue of the estate was distributed to Mary Alice Beckstead, as provided in the will, and an undivided one-fourth interest to Allen, as assignee of T. Dean Webster's interest in the estate of his father. Said decree expressly provided that the rights of the judgment and attachment creditors of T. Dean Webster, including their right to question the validity and effect of the assignment and conveyance to Allen by T. Dean Webster, should not be determined by the decree, but were expressly reserved. It further provided that the decree should not preclude the creditors of T. Dean Webster, T. Dean Webster himself, or Leland J. Allen from asserting rights they might have by virtue of an agreement made on April 24, 1930, between Mrs. Beckstead and Webster for equal division between them of the residue of their father's estate, in lieu of the three-fourths, one-fourth proportion provided by the will.

This procedure was proper. There is no provision in the Probate Code for determining the rights of attachment and judgment lien creditors in the heir's or legatee's share of the decedent's estate, and such creditors are not entitled to distribution in the probate proceeding, but may urge their claims in a separate suit. (*Martinovich* v. *Marsicano,* 137 Cal. 354 [70 Pac. 459]; Id., 150 Cal. 597 [89 Pac. 333, 119 Am. St. Rep. 254]; *Estate of Crooks,* 125 Cal. 459 [58 Pac. 89]; 11B Cal. Jur. 776.) Distribution may be made to an assignee of a devisee or legatee where the assignment is admitted, but where the assignment is challenged distribution is properly made as in the will provided, and the decree will not preclude the assignee from establishing his rights in an independent proceeding. (*Estate of Howe,* 161 Cal. 152 [118 Pac. 515]; *Estate of Ryder,* 141 Cal. 366 [74 Pac. 993].) Mrs. Beckstead challenged the validity of the agreement with her brother for equal division of the residue of the estate between them on the ground that it was without consideration and procured by undue influence and fraud. T. Dean Webster did not attack his assignment to

Allen. Hence the court · by its decree of distribution awarded an undivided one-fourth to Allen, and an undivided three-fourths to Mrs. Beckstead.

In her complaint in the partition suit, which is one of the three actions involved on the instant appeals, Mrs. Beckstead renewed her attack on the agreement for equal division and prayed that three-fourths of the ranch property be partitioned to her. She named as defendants in addition to Webster and wife, McGee, Southwestern Creditors Association and Allen. However, she joined thereafter with all parties, including appellant Allen, in a stipulation that the westerly half of the ranch should be set aside to her, and the easterly half to T. Dean Webster, or those who were entitled to his share in his father's estate. At the time of the death of La Torre Webster the ranch contained approximately 60 acres. By probate sales it had been reduced to 23½ acres, which was subject to a first deed of trust lien held by one Joseph Archambeault. Archambeault joined in a stipulation with the other parties to the partition suit that the southerly 10½ acres of the entire ranch should be sold to pay him. Thus the instant appeals involve the conflicting claims of Allen and respondents McGee and Southwestern Creditors Association to the easterly half of the northerly thirteen acres, that is, to six and one-half acres. The court determined in the partition suit, as it did in the other actions involved on this appeal, that as to said respondents Allen had no right, title or interest.

The court below found that McGee acquired an attachment lien on the ranch property on September 10, 1930, by virtue of an attachment levied by the sheriff of Santa Barbara County on T. Dean Webster's interest in the Santa Barbara County ranch, which attachment was had in an action brought by McGee in Los Angeles County to recover a money judgment against Webster and wife; that thereafter McGee obtained a judgment lien on said property by recordation in Santa Barbara County of an abstract of judgment in his favor in said action for $3,602.80. This claim of McGee was found to be a first lien on the acreage remaining. The court also gave priority in the order of their creation to the other judgment liens held by McGee against Webster and the lien of respondent Southwestern Creditors Association, which liens attached after the fraudulent con-

veyance to Allen. ■ A judgment is a lien on property of the judgment debtor fraudulently conveyed. (*First National Bank of Los Angeles* v. *Maxwell*, 123 Cal. 360 [55 Pac. 980, 69 Am. St. Rep. 64]; 12 Cal. Jur. 958.)

■ The appellant Allen attacks the court's finding that the assignments and deed to him were in fraud of Webster's creditors. The assignments were executed on February 13, 1932, the deed on November 23, 1932. Irrespective of whether said assignments and deed were valid as to creditors of Webster, the lien of McGee antedates the assignments and deed to Allen. McGee's judgment lien was acquired on October 20, 1930, upon recordation in Santa Barbara County of an abstract of his judgment. The judgment was a lien upon the interest of the devisee in real property of his father's estate, and such interest was subject to attachment as real property. (*Martinovich* v. *Marsicano, supra; Estate of Troy*, 1 Cal. App. (2d) 732 [37 Pac. (2d) 471]; *Shirran* v. *Dallas*, 21 Cal. App. 405, 421 [132 Pac. 454]; 15 Cal. Jur. 222.)

In an effort to establish a claim to the ranch property antedating the judgment lien of McGee, appellant Allen contended that by virtue of an oral agreement with Webster, said Webster held his interest in his father's estate in trust for Allen from the death of the father in August, 1928.

■ An attachment or judgment is a lien only on the interest of the judgment debtor. Latent equities against the debtor, such as arise upon a resulting trust, may be asserted against his attachment or judgment creditor, who as to such equities does not have the status of a *bona fide* purchaser. (*Whitney* v. *Sherman*, 178 Cal. 435 [173 Pac. 931]; *Davis* v. *Perry*, 120 Cal. App. 670, 676 [8 Pac. (2d) 514]; *Murphy* v. *Clayton*, 113 Cal. 153 [45 Pac. 267]; *Iknoian* v. *Winter*, 94 Cal. App. 223 [270 Pac. 999]; 25 Cal. Jur. 210; 15 Cal. Jur. 219.)

Allen testified that he rendered extensive legal services for T. Dean Webster commencing about 1918; that in 1923 and thereafter Webster agreed with Allen that if he had not been paid when Webster's father should die, "Webster's inheritance should belong to Allen to the extent of his bill". Upon the death of the father in 1928 it was agreed, Allen testified, that his services had been reasonably worth $20,000,

and Webster then offered to assign to Allen his interest in his father's estate, but Allen said that he would not take a deed until later, probably not until distribution.     An insolvent debtor may make a preferential payment or transfer of property to a creditor which may be attacked only in bankruptcy proceedings. (*Hibernia Savings & Loan Soc.* v. *Belcher,* 4 Cal. (2d) 268 [48 Pac. (2d) 681]; sec. 3432, Civ. Code.)

Allen did not render bills to Webster. At first he claims to have kept a record of time devoted to Webster's affairs, which he lost on moving his office, but for the most part he kept no such record.

Conceding for purposes of argument that an oral promise of a debtor to hold certain real property in trust for his creditors may give rise to a resulting trust in real property (25 Cal. Jur. 159), nevertheless the judgment against appellant Allen must be affirmed on the findings. The court found against the existence of such a trust, and that the assignments and deed claimed to have been executed in performance of the alleged trust were in fact executed by Webster while insolvent and to hinder, delay and defraud his creditors. The evidence strongly supports the view of the trial court that the transfers to Allen were colorable merely, and that it was never intended at any time that Allen should be the beneficial owner of Webster's interest in his father's estate.

Allen and Webster in their joint answers filed in the instant actions fix Allen's ownership of Webster's entire interest in the estate as dating from the death of Webster's father. Yet Webster procured his own appointment as administrator with the will annexed, to serve with his sister, Mrs. Beckstead, who was named as executrix in the will. Section 1365, Code Civ. Proc., provides that a relative is entitled to letters of administration only when entitled to succeed. Fred N. Arnoldy was attorney of record for both the executrix and Webster, as administrator, but Webster consulted appellant Allen throughout the probate proceeding. Neither Allen nor Webster disclosed to Arnoldy that Allen claimed Webster's entire interest until the fall of 1932, four years after the death of the elder Webster, when Arnoldy was preparing the petition for distribution. Nor did Mrs. Beckstead, the executrix, learn of Allen's claim until 1932.

Allen represented Webster in negotiations which led to the agreement of April 24, 1930, whereby Mrs. Beckstead agreed that her brother, Webster, should receive a half interest in the residue of the estate in lieu of the one-fourth provided by the will for Webster. Yet neither Mrs. Beckstead nor Arnoldy was informed that it was Allen, and not Webster, who would receive this enhanced share. There is abundant evidence that Allen knew of the claims of Webster's creditors and himself corresponded with some of them. He knew of their suits, yet from the death of Webster's father in 1928 until 1932 he made no effort to protect his alleged claim of interest by obtaining written evidence thereof and informing Webster's creditors of his claim.

Other evidence also supports the view of the trial court that it was never intended as between Allen and Webster that Allen should own Webster's interest in the estate. In February, 1932, just before execution of the assignment to Allen, Webster prevailed upon one Burt Moore, an old friend of his father's, to loan him $450, upon the representations that he needed this sum to protect his interest in his father's estate; "that persons in Owensmouth were trying to beat him out of his interest in his father's estate". Allen was present when this statement was made. Moore was not informed that it was Allen, and not Webster, who owned Webster's devised interest, and that Allen had owned such interest from a date soon after the death of the father in 1928. At this time Allen paid $280 to the sheriff of Los Angeles County in an attempted redemption of the ranch from execution proceedings had under section 561, Code of Civil Procedure. But this section relates only to personal property, and the proceedings thereunder in Los Angeles County were ineffective to reach real property in Santa Barbara County, where the ranch was situate. Allen denied that he made the attempted redemption from the sale which was ineffective as to the ranch with funds derived by Webster from the loan from Moore.

It also appears that in 1931 Webster purchased a considerable quantity of fruit trees for delivery in 1932 to the ranch; that in the spring of 1932 Webster directed the delivery to the ranch of these trees together with a few more then ordered, and signed a note for the purchase price. In 1929 and 1933 Webster represented to his creditor Len-

nox that he would be paid from Webster's interest in his father's estate, which was a half interest. In February, 1933, both Mr. and Mrs. Webster talked with Craig, who had assigned his claim to plaintiff McGee for collection, urging him to prevail upon McGee to delay execution sale upon the McGee judgment, on the ground that if the sale of the ranch on execution went through they would have nothing to live on in their old age. ▉ Where the issue is whether a transfer is in fraud of creditors, and there is other evidence of a common design between grantor and grantee to defraud creditors, declarations of the grantor subsequent to the transfer are admissible. (*Zeller* v. *Knapp*, 135 Cal. App. 122 [26 Pac. (2d) 704]; *Scholle* v. *Finnell*, 167 Cal. 90 [138 Pac. 746]; extensive note, 64 A. L. R. 797. 808, collecting authorities; 12 Cal. Jur. 1073.)

▉ The above evidence supports the conclusion of the trial court that the transfer to Allen was colorable only. The findings and judgment that the transfer was void, and that Allen had no right, title or interest, in the light of the findings as a whole must be interpreted as an adjudication that the transfer was void as to respondents who are creditors of Webster. The transfer was good between the parties, and so far as Webster is concerned he made no attempt to avoid said transfer to Allen, but joined with him in his answers setting up Allen's claim of title. (*Moore* v. *Schneider*, 196 Cal. 380 [238 Pac. 81]; *Darrah* v. *Lang*, 119 Cal. App. 552 [6 Pac. (2d) 989]; *Saint* v. *Saint*, 120 Cal. App. 15 [7 Pac. (2d) 374].)

The judgment is affirmed.

Shenk, J., Thompson, J., and Waste, C. J., concurred.

Rehearing denied.