[Civ. No. 14071.   First Dist., Div. Two.   Nov. 17, 1949.]

MICHAEL SVISTUNOFF et al., Respondents, v. PETER SVISTUNOFF, Appellant.

652

Phil F. Garvey and Julia M. Easley for Appellant.

Frank J. Baumgarten and Alex Riaboff for Respondents.

DOOLING, J.—■■■ This litigation is between parents as plaintiffs and their son as defendant. In 1939, the son, hereafter called Peter, was residing and domiciled in the United States of America and his parents, hereafter called Michael and Maria, were in this country temporarily, their place of domicile then being Harbin, China. While in this country in 1939, Michael and Maria acquired by deed the title to real property in San Francisco improved with an apartment house. They in turn deeded the property to Peter in the same year and returned to Harbin. Maria reentered the United States as an immigrant in 1941, and Michael returned as an immigrant in 1946. Upon Michael's return he demanded of Peter that Peter reconvey the apartment house property to Michael and Maria and upon Peter's refusal the parents commenced this action.

The complaint alleged and the court found that plaintiffs conveyed the property to defendant upon his oral promise to reconvey it to plaintiffs, their demand upon him to reconvey and his refusal. The facts so pleaded and found support the finding and judgment that the property is held in trust for Michael and Maria by Peter, the trust being of that character sometimes described as a voluntary constructive trust or a positive voluntary trust resting in parol. (*O'Brien* v. *O'Brien,* 50 Cal.App.2d 658, 660 [123 P.2d 877].) "It is the violation

of the parol promise which constitutes the fraud upon which the trust arises.'' (*Cooney* v. *Glynn,* 157 Cal. 583, 587 [108 P. 506].)

Although appellant argues to the contrary the evidence supports the finding of an oral promise to reconvey. Michael testified: ''My son . . . said that he will keep my property until I come back . . .'' and further that he refused a request of Peter to convey the property to him as a gift.

■ The confidential relationship between the parties (*Cooney* v. *Glynn, supra; Steinberger* v. *Steinberger,* 60 Cal. App.2d 116 [140 P.2d 31]) was established by the whole tenor of the parents' testimony and Michael at one point explained the reason for the conveyance to Peter by testifying: ''. . . since I loved my son very much and I considered him as the closest person to me, I thought that I will have no difficulties of getting my property back . . . .'' Appellant cites certain cases to the effect that the status of parent and child is not *per se* a confidential one, but the confidential relationship as a fact was established in this case. (See the discussion in *Steinberger* v. *Steinberger, supra,* 60 Cal.App.2d at p. 122.)

■ The failure of the court to expressly find the existence of a confidential relationship does not necessitate a reversal since a reading of the entire record satisfies us that the evidence would not support a finding to the contrary. (*Swallers* v. *Swallers,* 89 Cal.App.2d 458, 461 [201 P.2d 23].)

■ ■ Neither a claim of title by adverse possession nor the bar of the statute of limitations is open to appellant. Until the repudiation of the oral promise to reconvey the grantors are entitled to rely on the promise and the statute only commences to run upon the repudiation of the oral agreement. (*O'Brien* v. *O'Brien, supra,* 50 Cal.App.2d 658, 660; *Airola* v. *Gorham,* 56 Cal.App.2d 42, 54 [133 P.2d 78]; *Steinberger* v. *Steinberger, supra,* 60 Cal.App.2d 116, 124.)

The testimony of Maria was that she requested her son to reconvey the property to her in 1943 and 1944 on several occasions and in 1944 ''my son answered that because I have no experience he rather thinks that we should wait until the father returned to the United States.'' She also testified that at no time did Peter ever state to her that he was the owner of the property. Michael testified that shortly after his return to this country in July, 1946, he asked Peter for a conveyance and Peter refused. The evidence supports the finding that Peter for the first time in July, 1946, informed his parents

that he did not intend to reconvey. The action was commenced in January, 1947.

Appellant attempts to raise on appeal the defense of unclean hands. This defense was not pleaded nor, so far as the record discloses, suggested in any manner in the trial court. The claim is based on the testimony of Michael that he conveyed the property so that Peter could represent himself to be its owner in an affidavit or affidavits guaranteeing that Michael and Maria would not become public charges if admitted to the United States as immigrants; and that such affidavits were in fact made and used in procuring the entry visas of Michael and Maria. The record further shows the statement of counsel for respondents that his investigation had satisfied him that every immigrant must present the affidavit of some resident of this country guaranteeing the immigrant's support if admitted. No act of Congress is pointed to requiring such an affidavit and we are left to assume that the requirement is one made by departmental rule or regulation. The form of the assumed regulation was not established, nor was it shown whether it was required that the affiant be a property owner. If the point had been urged in the trial court counsel for respondents could have established these facts and might have shown that the representation as to ownership of the property was not necessary or material.

It was said in *Watson* v. *Poore,* 18 Cal.2d 302, 311-312 [115 P.2d 478]:

"Appellants did not plead the defense of unclean hands and the trial court made no finding thereon . . .

". . . However, when we consider that the trial court had no opportunity in the instant case to pass on that defense as it was not pleaded or called to its attention, we must conclude that it is not now available to appellants."

We are mindful of the cases that hold that in a clear case for the application of the clean hands doctrine the court may deny relief *sua sponte.* This is not such a case. The government is not actually injured since the ownership of the property by the immigrants is more likely to prevent them from becoming public charges than its ownership by the son, and we cannot know that if the beneficial interest of respondents in the property had been disclosed they might not as readily have been admitted to the country. If the issue had been made additional evidence to clear up these matters might have been produced.

The language of the court in *Bradley Co.* v. *Bradley*, 165 Cal. 237, 242 [131 P. 750], which also dealt with an affidavit falsely asserting full title in a trustee, seems apposite:

"But whatever judgment may be placed upon Richard Bradley's conduct in the forum of good morals, it was not a fraud of which law or equity takes cognizance. It was not designed to injure anybody. In fact, it injured nobody, least of all respondent, who seems to see in it rather an opportunity to make use of it to her advantage. It is not every wrongful act, nor even every fraud, which prevents a suitor in equity from obtaining relief. His misconduct must be so intimately connected to the injury of another with the matter for which he seeks relief, as to make it inequitable to accord him such relief."

Judgment affirmed.

Goodell, Acting P. J., concurred.

A petition for a rehearing was denied December 17, 1949, and appellant's petition for a hearing by the Supreme Court was denied January 12, 1950.