**In re ROGAL.**

No. 54382.

United States District Court
S. D. California, Central Division.

May 18, 1953.

---

714

Fendler, Weber & Lerner, by Daniel A. Weber, Beverly Hills, Cal., for Martus Rogal petitioner on review.

Craig, Weller & Laugharn, by Thomas S. Tobin, Los Angeles, Cal., for E. A. Lynch as trustee in Bankruptcy, respondent on review.

YANKWICH, Chief Judge.

On June 9, 1952, Sadie Rogal was adjudicated a bankrupt on a voluntary petition. On the same day, three of her sisters with whom she had been associated in the conduct of a partnership known as Summit Furniture Manufacturing Co., (also adjudicated a bankrupt on a voluntary petition dated April 14, 1952), were adjudicated bankrupts. The petitions and the schedules listed the ownership by each of the four sisters of an undivided one-fourth interest in certain improved business property in the City of Los Angeles, subject to certain encumbrances. The claim of one of the sisters to another residential property (known as the Oakwood Street property), will be referred to later on in the discussion.

In the petition of one of the sisters, Elizabeth Rogal, the following legend is attached to the description of the business property:

"The above described real property was transferred to petitioner and her three sisters, Victoria Rogal, Sadie Rogal and Sara Rogal, by her father, Martus Rogal, under an agreement with said Martus Rogal."

On July 9, 1952, Martus Rogal, the father, filed a petition to impress a trust on both pieces of real property. He alleged that on August 31, 1951, he executed a deed to the four daughters as joint tenants for his own benefit. He amplified that, suffering from what is known as Parkinson's disease, and relying trust and confidence in the daughters, and to relieve him of the cares and problems incident to the management of the property, he and the daughters orally agreed that they would manage, operate, and maintain and assist in the managing of the property, and that he would, at all times, remain the beneficial owner of the property and its income. The trusteeship was terminable at will, and they agreed that, when requested, they would, at any time, reconvey or quitclaim to him on demand any and all rights conveyed to them or the income or proceeds from it. Such net income as they received from the property was to be applied towards the support and maintenance of the petitioner and the payment of his medical bills.

I

The Question Involved In The Review

The petition alleged that on March 28, 1952, the bankrupts repudiated and violated the trust and executed and delivered to Pacific Factors Corporation (to be referred to as Pacific) an unacknowledged deed of trust upon the property, naming California Trust Company as trustee and Pacific as beneficiary to secure a pre-existing purported indebtedness from the partnership bankrupt to Pacific in the sum of $25,000.00.

Other allegations dealing with the coercive methods used against the sisters by Pacific to secure the execution of the instrument need not concern us, because the hearing on the petition was confined to the existence of the trust and did not concern itself to any extent with the validity

of the encumbrances which the bankrupt sisters placed on the property.

Somewhat similar allegations were made as to a residential property located at 4007 Oakwood Avenue, Los Angeles, California, which the petition alleged was purchased on April 1, 1947, and caused to be placed in the name of Elizabeth Rogal, one of the individual bankrupts, and another daughter, Lee Rogal Copeland, as joint tenants. As to it, it was alleged that the petitioner was to remain the beneficiary, and that the grant was made in trust for his use and benefit. Violation was alleged by Elizabeth Rogal through execution of a deed of trust to Pacific on March 28, 1952. Elizabeth Rogal, in her schedules, listed the one-half interest in the residential property, subject to a deed of trust in favor of the Bank of America and homestead rights claimed by her.

## II

### The Facts Before The Referee

The Referee issued an Order to Show Cause. The trustee appeared. His Answer denied the allegations of the petitioner. A hearing was had before the Referee.

The hearing disclosed that both properties were paid for by the petitioner. In addition to the listing of the properties as assets of the individual bankrupts, there was offered in evidence the fact that the bankrupts, through their manager, Sidney Weiss, in statements to Dun & Bradstreet, made for credit rating purposes which Dun & Bradstreet issued to the trade under dates of October 19, 1951, and February 26, 1952, listed the commercial building at a value of $40,000.00 and encumbered by $12,000.00.

Following a request for additional credit by Tropical and Western Lumber Company, (to be referred to as Tropical), through their credit manager, John C. Walsh, the four sisters signed a letter dated February 22, 1952, which listed the business property as owned by the four partners and its value at the time of purchase as $30,000.00, with a mortgage in the sum of $15,293.66. The Oakwood Street property was listed as owned by Elizabeth Rogal and Lee Rogal Copeland, who is not involved in the bankruptcy. Its value at the time of purchase was given as $17,500.00, with a mortgage on which there was due as of February 4, 1952, the sum of $7,553.46. The credit manager stated that, as a result of this investigation and this representation, he extended the credit to an amount of $7,337.99, which is an unpaid claim in the estate.

The petitioner testified at the hearing and stated, in substance, that he had purchased the properties and, because of his ill health, put them in the name of his daughters in trust for his benefit.

It was stipulated that, before extending credit, Tropical did not search the title to the property. Walsh testified that he had no knowledge of the deeds, but that he relied on the written representation contained in the Dun & Bradstreet reports, which he had seen, and in the letter signed by the four daughters.

This, in substance, is all the evidence the Referee allowed. The petitioner offered to prove that he did not, at any time, know that the sisters had claimed the property as their own, or that they had obtained credit on that basis. To the offers to prove these and other allegations of trust relationship, which have been summarized above, objection was sustained by the Referee upon the ground that the creditors had the right to rely on the public record. He stated, in sustaining the objection:

"People have an absolute right to rely upon the authenticity of public records. That is what they are for."

In the Memorandum Opinion filed in the case on November 17th, 1952, he placed his decision on the representation made in the letter. The brief memorandum, omitting the direction for findings at the end, reads:

"In this matter it appears that the Rogal sisters wrote a letter to a creditor, a lumber company, stating unequivocally, and without any limitation whatsoever, that they were the owners of the property in question, and in view of this positive statement to a creditor, I cannot hold that the property was held in trust for their father Marcus

Rogal, but on the contrary, hold that this property is an asset in the bankrupt estate."

On November 26, 1952, the Referee signed a formal Order denying the petition. The Findings recite that the property was purchased by the petitioner. But they declare that the representation made by the sisters to Tropical, to Dun & Bradstreet by their manager, and the later representation by the sisters in the letter to Walsh, and 'their reliance on' them caused them to act to their detriment, and that the petitioner, having recorded the deeds, without a declaration of the existence of a trust in them, and having permitted his daughters to hold out the real property as their own, is estopped from asserting a trust in either property as against Tropical and the trustee in bankruptcy. Elizabeth Rogal's homestead rights to the residence were recognized.

### III

### Resulting Trusts In California

This extensive outline presents a simple question:

Was the Referee right in denying to the petitioner the right to prove the existence of the trust and that the trust was recognized through continuous use of the income from it and payment by the petitioner of taxes and cost of upkeep, and that he did not authorize the daughters to claim and did not know, at any time, that they claimed the property and secured credit on the basis of such claim?

We dispose at the outset of the question whether, assuming the Findings to be correct, the property should be held for the benefit of all the creditors, or impressed with a lien in favor of Tropical only.

Ever since Moore v. Bay, 1931, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, was decided, the recognized rule in bankruptcy has been that, if a conveyance of property is declared invalid in a suit of the trustee at the behest of one creditor, the benefit inures to all. The meaning of Moore v. Bay, supra, was summed up by Mr. Justice Cardozo in a later case, Buffum v. Peter Barceloux Co., 1933, 289 U.S.

227, 234, 53 S.Ct. 539, 542, 77 L.Ed. 1140, in one sentence:

"What the trustee recovers will be for the benefit of all."

Commentators agree that this is a correct and logical application of the principle that the trustee, when he brings or retains in the estate property at the behest of one of the creditors, the other unpaid creditors share in the event that the property exceeds the claim of the particular creditor. Collier on Bankruptcy, 14th Ed., Vol. 4, Sec. 70.95. In this respect, the Referee was right in holding that the trustee could retain the property for the benefit of other creditors than Tropical. But the Referee was wrong in his premise in holding that the placing of title in the name of the daughters and their representation of it as their own were sufficient to bind the petitioner. He was also wrong in not allowing the petitioner to prove his acts subsequent to the making of the deeds in order to show a continuous exercise of dominion over the property and its income. Under the Bankruptcy Act, the Trustee

"[is] vested by operation of law with the title of the bankrupt as of the date of the filing of the petition [in bankruptcy]." Bankruptcy Act, § 70, sub. a, 11 U.S.C.A. § 110, sub. a.

As we are dealing with real property situated in California, rights of the parties to it must be determined, not according to general principles, but by the rules laid down by California courts in determining such rights. Section 853 of the California Civil Code reads:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Section 2224 of the California Civil Code reads:

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other

and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

■ California courts, in giving effect to these sections, have, for a period of over three-quarters of a century, held that a person may place the legal title in another in trust for himself, and that the legal owners will be compelled by the courts to restore title to the property, if they repudiate the trust. These principles have been applied with great uniformity to dealings between persons standing in fiduciary relationships, such as (1) husband and wife, Brison v. Brison, 1891, 90 Cal. 323, 27 P. 186; Allen v. Meyers, 1936, 5 Cal.2d 311, 54 P.2d 450; Lyttle v. Fickling, 1945, 72 Cal.App.2d 383, 164 P.2d 842; Huber v. Huber, 1946, 27 Cal.2d 784, 790, 167 P.2d 708; (2) parent and child, Mead v. Mead, 1919, 41 Cal.App. 280, 182 P. 761; Edwards v. Edwards, 1949, 90 Cal.App.2d 33, 202 P.2d 589; Svistunoff v. Svistunoff, 1949, 94 Cal.App.2d 651, 211 P.2d 352; (3) uncle and nephew, Steinberger v. Steinberger, 1943, 60 Cal.App.2d 116, 140 P.2d 31; (4) brother and brother, Logan v. Ryan, 1924, 68 Cal.App. 448, 229 P. 993; (5) brother and sister, Tench v. McMeekan, 1911, 17 Cal.App. 14, 118 P. 476; and see, Abbott v. Miller, 1950, 98 Cal.App.2d 595, 220 P.2d 570; Orella v. Johnson, 1952, 38 Cal.2d 693, 242 P.2d 5; Beck v. West Coast Life Ins. Co., 1952, 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979.

The only deviation from the principle established by these cases arises in the case of a *bona fide* purchaser for value without notice. As to him, the California Civil Code specifically provides as to both resulting and express trusts:

"No implied or resulting trust can prejudice the rights of a purchaser or encumbrancer of real property for value and without notice of the trust." California Civil Code, § 856.

"Where an express trust is created in relation to real property, but is not contained or declared in the grant to the trustee, or in an instrument signed by him, and recorded in the same office with the grant to the trustee, such grant must be deemed absolute in favor of purchasers from such trustees without notice, and for a valuable consideration." California Civil Code, § 869.

■ California courts have held that an attachment or judgment creditor is not a *bona fide* purchaser for value. Burns v. Peters, 1936, 5 Cal.2d 619, 625, 55 P.2d 1182; McGee v. Allen, 1936, 7 Cal.2d 468, 473, 60 P.2d 1026; Haupt v. Charlie's Kosher Market, 1941, 17 Cal.2d 843, 846, 112 P.2d 627; Boye v. Boerner, 1940, 38 Cal.App. 2d 567, 569–570, 101 P.2d 757. Both Collier and Remington state emphatically that the trustee does not take title as a bona fide purchaser for value without notice of equities. Collier on Bankruptcy, 14th Ed., Vol. 4., Sec. 70.62; Remington on Bankruptcy, 5th Ed., Vol. 5, Sec. 1412. See, In re Toms, 6 Cir., 1939, 101 F.2d 617, 619.[1]

The Court of Appeals for the Fifth Circuit has summed up the rule and the reason for it in a brief opinion which reads:

"The court disallowed a claim of the appellant that it was entitled to an equitable lien on land of the bankrupt which was intended to be included in a deed of trust or mortgage made by the bankrupt to the appellant more than a year prior to the bankruptcy, but by mutual mistake of the parties to that instrument was omitted therefrom. Under the recording laws of Texas the equitable title of the appellant to the omitted land was not rec-

---

[1.] This case has been cited and quoted from with approval by the Court of Appeals for the Second Circuit in Lockhart v. Garden City Bank & Trust Co., 2 Cir., 1940, 116 F.2d 658, 661, and is cited by the Supreme Court in Mangus v. Miller, 1942, 317 U.S. 178, 187, 63 S.Ct. 182, 87 L.Ed. 169. In this Circuit, it is rec-

ognized that the trustee takes the property subject to all claims and liens valid by state law. See, Mason v. Citizens' Nat. Trust & Savings Bank, 9 Cir., 1934, 71 F.2d 246, 248; In re Knox-Powell-Stockton Co., 9 Cir., 1939, 100 F.2d 979, 982; United States v. Sampsell, 1946, 9 Cir., 153 F.2d 731, 735.

quired to be recorded in order to protect it against creditors of the bankrupt in whose favor an attachment or an execution on a judgment against the bankrupt was issued. Johnson v. Darr, 114 Tex. 516, 272 S.W. 1098. Under amended section 47a of the Bankruptcy Act (11 U.S.C.A. § 75), the trustee in bankruptcy has the status of such a creditor, *not the status of a bona fide purchaser for value and without notice.* Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275; Zartman v. First National Bank, 216 U.S. 134, 30 S.Ct. 368, 54 L.Ed. 418. The rights of the trustee in bankruptcy being subordinate to those of the appellant, based on the asserted equitable claim, which was supported by the evidence, the disallowance of that claim was erroneous." Del Rio Bank & Trust Co. v. Cornell, 5 Cir., 1932, 57 F.2d 142, 143. (Emphasis added.)

In Pacific State Bank v. Coats, 9 Cir., 1913, 205 F. 618, the trustee in bankruptcy challenged the validity of a mortgage claiming that it was invalid as to the creditors, and, consequently, as to him. The Court, finding that the mortgage, although not acknowledged, was considered a lien on the property under the law of Washington, held that the lien was good against the trustee, saying:

"Such being the law of the state of Washington as expressed by the Supreme Court, it is clear that an attachment, judgment, or execution lien creditor acquires no rights in the property except upon the interest which the debtor may have therein at the time the lien attaches; and such is all the * * * rights, remedies, and powers of a creditor holding a lien by legal or equitable proceeding, or of a judgment creditor holding an execution duly returned unsatisfied. The mortgage must be held to be superior in right to the statutory lien of the trustee.

"The decree of the court below will therefore be modified, the mortgage being declared void as to the personal property and valid as to the real property, and superior to any right of the trustee therein; and such will be the order of the court, with costs to the appellant." Pacific State Bank v. Coats, supra, 205 F. at page 626.

And see, Mason v. Citizens' Nat. Trust & Savings Bank, 9 Cir., 1934, 71 F.2d 246, in which the ruling was followed.[2] It will thus be seen that the courts, in determining the title of the trustee to the property, apply consistently the law of the *situs*, the law of the State in which the property is located and in which the adjudication is made. As said in United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731, 735:

"*The trustee acquires no better title than the bankrupt himself had.*" (Emphasis added.)

#### Absence of Knowledge

#### IV

The trustee seems to think that the ruling in Moore v. Bay, 1931, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, sustains the action of the Referee. The argument overlooks the fact that the rights of the trustee in bankruptcy to property must be determined according to the law of the State in which the property is located and the adjudication made. This is the rule, especially since the decision in Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and is evident from the many cases discussed in the preceding section (III).

In the Moore case, the court, finding that a chattel mortgage on automobiles and showroom equipment was invalid *under the law of California,* held that, because of such invalidity, title to the property vested in the trustee for the benefit of all the creditors. But here we are dealing with an attempt to prove a resulting trust *valid* under the laws of California. Only

---

2. Similar rulings as to real property were made in American National Bank of Sapulpa v. Harris, 10 Cir., 1936, 84 F.2d 181, *under the law of Oklahoma,* Mulhern v. Albin, 8 Cir., 1947, 163 F.2d 41, *under the law of Iowa,* and as to personal property, in Lochner v. Moreland, 5 Cir., 1951, 192 F.2d 985, *under the law of Maryland.*

two exceptions to the rule of validity expounded in Part II of this Opinion are allowed. One is in favor of a bona fide purchaser for value. The other exists where, in addition to mere placing of title in the name of another, the court finds that the person causing the property to be placed in the name of another knew, *after the transfer*, that the holder of the legal title was claiming the property to be his own in order to obtain credit. Such knowledge cannot be implied from mere recordation or representation by holder of the legal title.

As said in Breeze v. Brooks, 1892, 97 Cal. 72, 76–77, 31 P. 742, 743, 22 L.R.A. 257:

> "*So far as the findings disclose, Patrick did no act to induce creditors of John to believe the land was John's, save that he allowed the title upon the record, to stand in John's name, which record these creditors never examined. It does not appear that Patrick had any knowledge that John was getting credit from any one upon the faith of his apparent ownership of the land. * * * Neither do the facts found by the court show that Patrick had any knowledge that John was obtaining credit with the plaintiffs upon the faith of his apparent ownership of the land.* The court does not find that he had any such knowledge, and its finding that he knew of the charge to him of certain items which should have been charged to himself, and the subsequent correction of the mistake, cannot be * * * charged to John upon any faith in his ownership of the land.*"[3]

(Emphasis added.)

■ Several matters are apparent from a reading of these cases: (1) The creditors of the holder of the record title cannot subject the property to the payment of his debts merely because the title stands in

his name. Before they can do so, they must show, in addition to record title, (2) knowledge on the part of the beneficiary that the holder of the legal title is claiming the property as his own; and (3) a creditor must have relied upon the trustee's claim of title and been induced by such claim to extend credit. Only when *all these conditions are present* do the elements to estoppel exist.

In Williams v. Levy, 9 Cir., 1931, 54 F.2d 18, as here, the Referee had ruled that property for which the consideration had been paid by another which stood on record in the name of the bankrupt was property of the estate. The Order was set aside by the District Court on review. In re Meyerfeld, 46 F.2d 665. On appeal, the Court of Appeals, the late Judge William P. James of this district writing the Opinion, summed up the situation in these words:

> "The case as made by the facts is one where the bankrupt, prior to bankruptcy, took the naked legal title to property, the whole ownership of which was in appellee, with the duty upon demand of appellee to transfer the same to him. It would be strange indeed if in such a situation, where bankruptcy has intervened, the trustee of the title holder's estate could, by securing an order of a referee to that effect, wipe out all of the property rights of the owner in the land. There is not a finding, as made by the referee, which can justify the order which was reviewed by the district judge. No situation was presented or claimed as that where the purchaser of property has had title taken in the name of another person, *and has knowingly allowed such person to obtain credit upon the representation that he was the true*

---

3. This was a reassertion of the same principle declared in a prior appeal in the same case, Breeze v. Brooks, 1886, 71 Cal. 169, 181, 9 P. 670, 11 P. 885. The principle here declared has been followed consistently in the following cases: Murphy v. Clayton, 1896, 113 Cal. 153, 160–162, 45 P. 267; Phelps v. Davies, 1932, 126 Cal.App. 419, 424, 14 P.2d 922; Nishi v. Downing, 1937, 21 Cal.App.2d

1, 3, 67 P.2d 1057; Owings v. Laugharn, 1942, 53 Cal.App.2d 789, 791–792, 128 P.2d 114, (in which a resulting trust was sustained against the *claim of a trustee in bankruptcy)*; McGee v. Allen, 1936, 7 Cal.2d 468, 473, 60 P.2d 1026; McNeil v. Dow, 1948, 89 Cal.App.2d 370, 375, 200 P.2d 859; Svistunoff v. Svistunoff, 1949, 94 Cal.App.2d 651, 211 P.2d 352.

*owner thereof.* Neither are the rights of any innocent transferees involved. The case is so plain as that a mere statement of the undisputed facts answers every argument of the trustee." [54 F.2d 19.] (Emphasis added.)

▬ The Referee did not allow the petitioner to go into the details of the arrangement between him and his daughters and his subsequent relation to the property. As already appears, he also sustained an objection to an offer to prove that the petitioner did not authorize either Weiss or the daughters to represent themselves as the owners, and that he had no knowledge that they were representing this property as their own or that they were obtaining credit on the basis of the claim of ownership. In addition to lengthy and formal offers to prove all the allegations contained in the petition, which were amplified, the Referee sustained objections to every question directed by the petitioner's counsel to witnesses for the trustee aiming to show lack of authority and knowledge of the petitioner that the properties were being represented as those of the bankrupts.

To all such offers the Referee's answer, —expressed, it should be admitted, "regretfully",—was: "The Petitioner cannot give a deed and then hide behind a secret agreement." In this, the Referee disregarded the law declared in the cases just cited which rule that the mere placing on record of property in the name of another *does not* create estoppel. As said in Murphy v. Clayton, 1896, 113 Cal. 153, 162, 45 P. 267, 269:

"*There is nothing illegal or against public policy in the mere fact that a party equitably entitled to real property permits the legal title to remain in*

---

4. A similar statement is found in Bank of Cottonwood v. Henriques, 1928, 91 Cal. App. 88, 96, 266 P. 836, 839:
    "It was necessary for the appellant, in order for it to prevail in this action, to show that Frank R. Henriques was in some way privy to William R. Henriques' obtaining credit from the bank, or that, in gaining such credit, the *bank relied upon some affirmative statement or act of Frank R. Henriques,* other than his per-

*another.* Resulting trusts are fully recognized by our law, and every one is presumed to know the law."[4] (Emphasis added.)

In short, there must be brought home to the beneficiary the knowledge that the holders to the legal title are claiming the property as their own and securing credit on that basis.

As the record here does not show that the daughters engaged in any business requiring credit rating before the deeds were executed, and as the petitioner was old, infirm and suffering from a dreaded disease, it is likely that he may not have known of their activity so as to be charged with knowledge. At any rate, he should not be charged with such knowledge without a full hearing.

The matter is remanded to the Referee with direction to set aside the Order of November 26, 1952, and to hold further hearings allowing the petitioner to offer testimony in support of the allegations of his petition, and then to determine anew the trustee's rights to the property involved and the claim of the petitioner in accordance with the views here expressed.

mitting the title to stand of record in the name of *William R. Henriques, and the mere fact that Frank R. Henriques allowed the title to the land to stand of record in the name of William R. Henriques is unavailing to appellant,* unless it established to the satisfaction of the court that they relied thereon as an inducement to give credit to William R. Henriques". (Emphasis added.)