In the Matter of Joseph TORREZ, Individually and dba Torrez Machine Shop, and Mary Hilda Torrez, Debtors.

John TORREZ, Jr., Jessie Torrez and Rachel Torrez Tristao, Appellants,

v.

Joseph TORREZ, Individually and dba Torrez Machine Shop, and Mary Hilda Torrez, Appellees.

United States Bankruptcy Appellate Panels, of the Ninth Circuit.

Argued and Submitted Jan. 22, 1986.

Decided April 28, 1986.

Trevor Clegg, Wild, Carter, Tipton & Oliver, Fresno, Cal., for appellants.

John P. Eleazarian, Kimble, MacMichael, Jackson & Upton, Fresno, Cal., for appellees.

Before MEYERS, ELLIOTT and ASHLAND, Bankruptcy Judges.

## OPINION

JAMES W. MEYERS, Bankruptcy Judge:

This is an appeal from an adversary proceeding brought by the Appellees, the Debtors Joseph and Mary Hilda Torrez, to quiet title to 120 acres of farmland in the Lower Tule River Irrigation District ("District"). Under federal law each landowner can receive water for a maximum of 160 acres of land. 43 U.S.C. § 431. The Appellants John and Jessie Torrez already owned 160 acres prior to purchasing these additional 120 acres.

On January 15, 1975, John Torrez, Jr. and Jessie Torrez purchased the 120 acres by making a downpayment and encumbering them with a deed of trust for $67,500 to the former owners. However, legal title was conveyed by the former owners to the Debtors, Joseph Torrez and his wife Mary Hilda Torrez. Joseph is the son of John and Jessie Torrez. The property was placed in the name of the Debtors solely in order for John Torrez to receive water from the District in violation of the acreage restriction.[1]

No written trust document was ever executed. All payments on the deed of trust and for property taxes were made by John and Jessie Torrez. John Torrez farmed the land without any lease agreement with his son. John Torrez's hired hand lived in a farmhouse on the land. Additionally, John Torrez improved the land by having a new pump system installed.

On July 6, 1981, the Debtors executed a promissory note for $121,500 in favor of the Bank of America. This note was secured by a deed of trust on the land. The proceeds of the note were delivered to John

---

[1] It does not appear from the record that John Torrez attempted to defraud the federal government of any money. Instead, he thwarted the policy objective of encouraging small farms. Under 43 U.S.C. § 431, water from the District will be sold to farmers with no more than 160 acres. While farmers can own more than 160 acres, the District cannot sell them water for the additional acreage. 43 U.S.C. §§ 431 and 435.

The penalty for violating the acreage restrictions is loss of water for the excess acreage. 43 U.S.C. § 435.

and Jessie Torrez who subsequently repaid the note in full.

In August 1982, John Torrez knew that the Debtors were in a precarious financial situation. In order to protect his investment, John Torrez directed the Debtors to transfer the 120 acres to his daughter, Rachel Torrez Tristao, as trustee. While insolvent, the Debtors executed this transaction on August 13, 1982. Rachel Tristao asserts that she holds the property in trust for John and Jessie Torrez. The Debtors received no consideration for this transfer.

The Debtors began Chapter 11 proceedings on January 24, 1983. To finance their reorganization, the Debtors wish to sell the 120 acres and purchase a different tract of land. The Debtors, as debtors in possession, began an adversary proceeding to quiet title and to obtain a turnover order for possession of the farm.

John and Jessie Torrez have argued both below and on appeal that the 20 acres were never part of the Debtors' estate because it was held in an express oral trust. In the alternative, they have argued that the land is held in a resulting trust.

Joseph and Mary Hilda Torrez advanced three arguments in favor of a turnover order. First, they claimed that the land was a gift to them. Second, they argued that as debtors in possession their avoiding power under Section 544 of the Bankruptcy Code ("Code") allows them to strike down both the trust and the transfer of the land to Rachel Tristao. Finally, they argued that no trust can be enforced because of the illegal purpose for creating the trust.

The trial court found that John Torrez attempted to place the property in trust for the sole purpose of acquiring water from the District in violation of federal law. Such a finding precluded the Debtors' gift theory. In its opinion, the trial court found that John and Jessie Torrez were trying to enforce a resulting trust, not an express oral trust. The trial court held that the illegal purpose for which the trust was created precludes its enforcement, regardless of its nature. At the time of the transfer the Debtors were insolvent within

the meaning of 11 U.S.C. § 101(29). Since the Debtors received no consideration for their transfer to Rachel, this transfer was set aside under 11 U.S.C. § 548(a)(2), thus voiding the title of Rachel Tristao as well as John and Jessie Torrez.

We REVERSE.

## DISCUSSION

### A. Standard of Review

 As an appellate court, this Panel cannot set aside a finding of fact by the trial court unless it is clearly erroneous. Bankruptcy Rule 8013; *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985). While the Appellants have provided us with a portion of the trial transcript and a declaration by John Torrez, this record is not adequate to overturn any of the trial court's findings of fact. *In re Payeur,* 22 B.R. 516, 519 (1st Cir. BAP 1982). However, the trial court's conclusions of law are subject to *de novo* review. *In re Swanson,* 36 B.R. 99, 100 (9th Cir. BAP 1984); *Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1377 (9th Cir.1985).

### B. Turnover of Property Held in Trust

 The debtors in possession have demanded the turnover of the 120 acres as a fraudulent transfer to an insider, the sister of one of the Debtors, under 11 U.S.C. §§ 548 and 547(b)(4)(B). These sections apply only if the estate has an interest in the land beyond bare legal title.

The United States Supreme Court has stated that Congress has plainly excluded from the estate the property of others held by the debtor in trust at the time of the filing of the petition. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 fn. 10, 103 S.Ct. 2309, 2314 fn. 10, 76 L.Ed.2d 515 (1983). We stated in *In re Gurs,* 34 B.R. 755, 757 (9th Cir. BAP 1983), that where the debtor possesses only a legal and not an equitable interest in property, the equitable interest does not become part of the estate. *See also In re Flight*

*Transp. Corp. Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984). Other sections of the Code such as Sections 548 and 547 cannot be used to allow a bankruptcy estate to benefit from property that the debtor did not own. *See Matter of Quality Holstein Leasing*, 752 F.2d 1009, 1013 (5th Cir.1985).

■ If in the instant case a valid trust exists, the estate has no interest in the property. To determine whether a valid trust exists, we must look to state law. *In re K & L Ltd.*, 741 F.2d 1023, 1030 fn. 7 (7th Cir.1984). In this case California Law governs since California is the situs of the real estate. *In re Rogal*, 112 F.Supp. 712, 716 (S.D.Cal.1953).

■ Section 544 of the Code tests the existence of a valid trust under state law by cloaking a debtor in possession with the status of a hypothetical lien creditor and a bona fide purchaser of real property. Under California law a lien creditor of a trustee of an enforceable trust tinged with illegality can place a valid lien on the property. *Lala v. Maiorana*, 166 Cal.App.2d 724, 734, 333 P.2d 862 (1959). Thus, we need not consider whether a valid express oral trust actually exists in this case because the debtor in possession clad with the status of a hypothetical lien creditor could upset the trust.

■ Under California law a lien creditor cannot prevail against a resulting trust. *In re Rogal, supra*, 112 F.Supp. at 717. *See also Dennes v. Butts*, 90 F.2d 522, 524 (9th Cir.1937). Only a bona fide purchaser for value without notice can upset a resulting trust. Cal.Civ.Code Section 856; *In re Rogal, supra*, 112 F.Supp. at 717. The existence of such a bona fide purchaser is impossible as a matter of California law where a party holding the land adversely to the estate has possession of the property. *In re Gulino*, 779 F.2d 546, 550 (9th Cir. 1985). In the instant case John and Jessie Torrez had possession of the 120 acres.

They farmed the land; their hired hand lived in the farmhouse. Under California law, possession of real estate constitutes constructive notice to any prospective purchaser of all the rights and claims of the person in possession. *In re Gulino, supra*, 779 F.2d at 550; *Claremont Terrace Homeowners' Association v. United States*, 146 Cal.App.3d 398, 408, 194 Cal. Rptr. 216 (1983). Thus, the avoiding power of Section 544 will not make the corpus of a valid resulting trust property of the estate. *See United States v. Whiting Pools, Inc., supra*, 462 U.S. at 205 n. 10, 103 S.Ct. at 2314 n. 10.

### C. *Resulting Trusts*

■ Under California law a resulting trust is implied by operation of law whenever a party pays the purchase price for a parcel of land and places the title to that land in the name of another.[2] Cal.Civ.Code Section 853. The trust is presumed to result in favor of the person who paid the purchase price. The Statute of Frauds has no applicability to an action for a resulting trust. *Jones v. Gore*, 141 Cal.App.2d 667, 673, 297 P.2d 474 (1956). If title to the land is conveyed to a child of the purchaser, there is a rebuttable presumption that a gift is intended. *Gomez v. Cecena*, 15 Cal.2d 363, 367 (1940). The trial court found that John and Jessie Torrez had title to the 120 acres placed in the name of the Debtors solely to evade acreage restrictions. Such a finding rebuts the presumption that a gift was intended and is reviewable only under the clearly erroneous rule. *Anderson v. City of Bessemer City, N.C., supra*, 105 S.Ct. at 1511–12. Given the evidentiary record before us, we must sustain this finding.

The trial court refused to enforce a resulting trust created for the purpose of violating federal law. A survey of existing case law reveals only one instance where a California court has struck down a resulting trust created to violate the law. In

---

**2.** As a general rule of law, such a purchase money resulting trust will pre-empt an oral express trust if one would otherwise exist. *Scott*

*on Trusts,* § 50, p. 372. However, no California court or statute has ever adopted this rule of law.

*Hainey v. Narigon,* 247 Cal.App.2d 528, 531, 55 Cal.Rptr. 638 (1966), the court gave title to a home to the veteran-trustee where a non-veteran had acquired the home through an illegally obtained veteran's loan. Instead of title, the non-veteran was granted a lien on the property for the amount of the money he had invested plus interest.

■ We would follow the holding of the *Hainey* court and grant the senior Torrezes a lien if the Debtors had standing to raise the issue of illegality.[3] Under California law, a resulting trust is barred by the equitable doctrine of unclean hands only if the inequitable conduct "affects the relationship between the plaintiff and the defendant." *Bradley Co. v. Bradley,* 165 Cal. 237, 242, 131 P. 750 (1913). "It is not every wrongful act nor *even every fraud* which prevents a suitor in equity from obtaining relief." *Bradley Co. v. Bradley, supra,* 165 Cal. at 242, 131 P. 750. (Emphasis added.)

The most recent court to deal with this issue imposed a resulting trust on property that the beneficiary had placed in trust in order to fraudulently obtain a larger loan from his employer, a bank, than the bank would loan to its employees. *Martin v.*

*Kehl,* 145 Cal.App.3d 228, 239–40, fn. 1, 193 Cal.Rptr. 312 (1983). Although the beneficiary had acquired the property through a fraudulently obtained loan, a resulting trust was imposed because the rights of the trustee were not prejudiced in any way.

■ Under California law, the Debtors lack standing to use the Appellants' violation of federal law to invoke the unclean hands doctrine, void the resulting trust and seize the 120 acres for the estate. *Martin v. Kehl, supra,* 145 Cal.App.2d at 239–40, fn. 1, 193 Cal.Rptr. 312. A review of the record does not reveal any evidence or allegation that the Debtors were harmed in any way by the Appellants' conduct. While this Panel does not endorse the subterfuge found here, under California law we must reverse and direct the trial court to vacate the order avoiding the conveyance to Rachel Torrez Tristao and quieting title in the Debtors.

REVERSED and REMANDED.

3. The *Hainey* court did not deal with the question of standing.